IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | Case No. 3:20-cr-31-1 |
|---|---|---|
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| ISIAHA WAULK, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

I. Introduction

Pending before the Court is Defendant Isiaha Waulk's ("Waulk") Motion to Dismiss Count III of the Indictment, which charges him with violating 18 U.S.C. § 922(g)(1). (ECF No. 222). The Motion is fully briefed and therefore ripe for disposition. (ECF Nos. 222, 232).

At bottom, Waulk argues that § 922(g)(1)—the statutory provision that criminalizes the possession of a firearm and ammunition by a convicted felon—is (1) unconstitutional as applied to him, (2) unconstitutional on its face, (3) unconstitutionally vague, and (4) rooted in an unduly expansive view of Congress's Commerce Clause power. (ECF No. 222). Because each of these arguments is unavailing, the Court will **DENY** Waulk's Motion.

II. Background

On December 1, 2020, a federal Grand Jury indicted Waulk and his then co-Defendant,[1] Derik Carothers. (ECF No. 1). Count I of the Indictment charges Carothers and Waulk with conspiracy to distribute and possess with intent to distribute a quantity of cocaine base, in the

---

[1] The Court notes that while Waulk and Carothers were jointly charged in the Indictment, the Court granted Carothers's Motion to Sever on April 5, 2024. (ECF No. 175). Accordingly, Defendants are currently on separate courses for individual trials. (*See* ECF Nos. 212, 213).

form commonly known as crack, a Schedule II controlled substance. (*Id.* at 1); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846. Count II charges Carothers and Waulk with possession of a firearm in furtherance of a drug trafficking crime. (ECF No. 1 at 2); 18 U.S.C. § 924(c)(1)(A)(i). At Counts III and IV, Waulk and Carothers, respectively, are separately charged with possession of a firearm and ammunition by a convicted felon. (ECF No. 1 at 3–4); 18 U.S.C. § 922(g)(1).

Carothers and Waulk both had their initial appearances and arraignments before Magistrate Judge Keith A. Pesto on January 13, 2021. (ECF Nos. 21, 27). There, both pleaded not guilty to the charges against them in the Indictment. (ECF Nos. 22, 28).

Over three years later, after the Court granted him numerous extensions of time to file pretrial motions, Waulk filed, *inter alia*, his Motion to Dismiss Count III of the Indictment on July 2, 2024. (ECF No. 222). The Government responded opposing Waulk's Motion on August 2, 2024. (ECF No. 232).

### III.    Legal Standard

Waulk's Motion to Dismiss Count III of the Indictment is governed by Rule 12 of the Federal Rules of Criminal Procedure. That Rule allows a defendant to raise a defense "by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits[.]" Fed. R. Crim. P. 12(b)(3).

Waulk's argument that § 922(g)(2) is unconstitutional—both on its face and as applied to him—sounds in Rule 12(b)(3)'s defense of "a defect in the indictment[,]" including the "failure to state an offense[.]" *Id.* 12(b)(3)(B)(v); *United States v. Ho Ka Yung*, No. 17-CR-14, 2018 WL 619585, at *1 (D. Del. Jan. 30, 2018) ("An indictment is defective if it alleges [a] violation of an unconstitutional statute."); *United States v. Harrison*, No. 23-CR-129, 2023 WL 6795588, at *7 (W.D.

Pa. Oct. 13, 2023) ("Under Rule 12, the Court can dismiss criminal charges in an indictment where there is an infirmity of law in the prosecution, such as an unconstitutional statute.").

"[T]he scope of a district court's review at the Rule 12 stage is limited." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012). "[A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000). And, relevant to the disposition of the pending Motion, "[i]n evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment." *Huet*, 665 F.3d at 595.

## IV. Discussion

### A. Relevant Second Amendment Authority

Waulk challenges the constitutionality of § 922(g)(1), commonly referred to as the federal "felon-in-possession statute[.]" *Binderup v. AG of United States*, 836 F.3d 336, 380 (3d Cir. 2016). Section 922(g)(1) makes it "unlawful for any person . . . who has been convicted in any court . . . of a crime punishable by imprisonment for a term exceeding one year" to possess firearms or ammunition. 18 U.S.C. § 922(g)(1).[2] The thrust of Waulk's contention is that § 922(g)(1) "runs afoul of the Second Amendment[.]" (ECF No. 149 at 2).

That Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

---

[2] The Court notes that the elements of a § 922(g)(1) offense are as follows: (1) "the defendant has been convicted of a felony"; (2) "after this conviction the defendant knowingly possessed a firearm"; (3) the "firearm was in or affected interstate or foreign commerce"; and (4) the defendant "had knowledge of … his status as a felon" when he possessed the firearm. *United States v. Adams*, 36 F.4th 137, 143 (3d Cir. 2022) (cleaned up).

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment protects an individual's right to possess a firearm "unconnected with militia service." 554 U.S. 570, 582 (2008). The *Heller* Court emphasized that the right of "law-abiding, responsible citizens to use arms in defense of hearth and home" was at the "core" of the Second Amendment. *Id.* at 634–35. But *Heller* noted that an individual's Second Amendment right is "not unlimited." *Id.* at 626. "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* As relevant here, "nothing in our opinion[,]" the *Heller* Court explained, "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Id.*

Two years after *Heller*, in *McDonald v. City of Chicago*, the Supreme Court held that the Fourteenth Amendment "incorporates the Second Amendment right recognized in *Heller*" because the right is "fundamental" to "our system of ordered liberty." 561 U.S. 742, 778 (2010). *McDonald* reiterated *Heller*'s "central holding"—"that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *Id.* at 780. The *McDonald* Court also "repeated" *Heller*'s "assurance" that the Court's Second Amendment jurisprudence casts no doubt on prohibitions on the possession of firearms by felons. *Id.* at 786.

One passage from *Heller* guided the Second Amendment analysis employed by circuit and district courts alike for over a decade. "Under any of the standards of scrutiny that we have applied to enumerated constitutional rights," *Heller* explained, the statute at issue in that case "would fail constitutional muster." 554 U.S. at 628–29. This excerpt led the Third Circuit, along

with the vast majority of its sister courts, to apply a "means-end scrutiny analysis in Second Amendment cases." *Lara v. Comm'r Pa. State Police*, 91 F.4th 122, 128 (3d Cir. 2024) (citing, *inter alia*, *Halloway v. AG United States*, 948 F.3d 164, 172 (3d Cir. 2020); *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 128 (2d Cir. 2020); *United States v. McGinnis*, 956 F.3d 747, 754 (5th Cir. 2020)).

But the Supreme Court, in *New York State Rifle & Pistol Ass'n v. Bruen*, held that "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." 142 S. Ct. 2111, 2127 (2022). Instead, those cases taught "that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2126. The Court explained:

> To justify its [firearm] regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

Adhering to this standard, *Bruen* held "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 2122. Mirroring *Heller* and *McDonald*, the Court emphasized that felon-in-possession prohibitions are "presumptively lawful[.]" *Id.* at 2162 (Kavanagh, J., concurring).

A year later, the Third Circuit applied *Bruen*'s framework in *Range v. AG United States*, 69 F.4th 96 (3d Cir. 2023), and found that § 922(g)(1) was unconstitutional as applied to an individual convicted of one count of making a false statement to obtain food stamps. Throughout their

briefing, the parties repeatedly rely upon *Range* to argue whether § 922(g)(1) can be constitutionally applied to Waulk. (*See generally* ECF Nos. 222, 232).

But on July 2, 2024, the Supreme Court granted certiorari, vacated *Range,* and remanded the case to the Third Circuit "for further consideration in light of *United States v. Rahimi,*" 144 S. Ct. 1889 (2024). *Range* therefore has no place in the Court's analysis of Waulk's Motion.

*Rahimi*, however, warrants further discussion. There, the Supreme Court acknowledged that, even after *Bruen*, "some courts have misunderstood the methodology of our recent Second Amendment cases." *Rahimi*, 144 S. Ct. at 1897. "These precedents were not meant to suggest a law trapped in amber[,]" the Court clarified. *Id.* Instead, as "explained in *Bruen*, the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id.* at 1898.

From there, *Rahimi* largely reiterates what *Bruen* held two years prior. Where the Second Amendment's plain text covers an individual and his or her conduct, the burden shifts to the Government to justify the regulation at issue, and the Court "must ascertain whether the new law is 'relevantly similar' to laws our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Id.* (quoting *Bruen*, 142 S. Ct. at 2133 & n.7). "Why and how the regulation burdens the right are central to this inquiry." *Id.* (citing *Bruen*, 142 S. Ct. at 2133). And while the law "must comport with the principles underlying the Second Amendment," it "need not be a 'dead ringer' or 'historical twin.'" *Id.* (quoting *Bruen*, 142 S. Ct. at 2133).

  **B.**  **Section 922(g)(1) Is Constitutional as Applied to Waulk**

The Court begins by providing Count III of the Indictment, which sits at the heart of the pending Motion. That Count reads, in full:

> On or about October 20, 2019, in the Western District of Pennsylvania, the defendant, ISIAHA WAULK, a/k/a Isaiah Waulk, a/k/a Ike, knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, namely, on or about November 4, 2013, in the Cambria County (Pennsylvania) Court of Common Pleas, at Docket Number 1167-2012, of the crime of aggravated assault, and on or about January 16, 2015, in the Cambria County (Pennsylvania) Court of Common Pleas, at Docket Number 1454-2014, of the crimes of robbery and aggravated assault, did knowingly possess, in and affecting interstate commerce, the following firearms and ammunition:
>
> a. Glock Model 23 .40 caliber handgun (serial number BEUD296);
>
> b. Ruger Model AR-556, 5.56 caliber rifle (serial number 85577838);
>
> c. Glock Model 22 .40 caliber handgun (serial number obliterated, later chemically restored to SWN 825); and
>
> d. approximately 8 rounds of ammunition.
>
> In violation of Title 18, United States Code, Section 922(g)(1).

(ECF No. 1 at 3).

Waulk's as-applied constitutional challenge to the § 922(g)(1) offense at Count III, in contrast to his facial challenge, which the Court will address separately, "does not contend that [§ 922(g)(1)] is unconstitutional as written but that its application to [Waulk] under particular circumstances deprived [him] of a constitutional right." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).

Waulk argues that because the Second Amendment covers him "and the conduct barred by [§] 922(g)(1)," the Government bears the burden to affirmatively prove that § 922(g)(1)'s application to him is consistent with our Nation's tradition of firearms regulation. (ECF No. 22 at

5). He contends that because the Government "will not be able to" do so here, he cannot be constitutionally charged under § 922(g)(1). (*Id.* at 6).

The Government counters that "an as-applied challenger must show 'that the acts of his that are the subject of the litigation fall outside what a properly drawn prohibition could cover' — a burden that Waulk has failed to carry. (ECF No. 232 at 6) (quoting *Board of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 482 (1989)). Specifically, the Government avers that Waulk "had no Second Amendment right to possess firearms for an unlawful purpose, such as furthering drug trafficking." (*Id.* at 13). Moreover, the Government contends that § 922(g)(1)'s application to Waulk "is consistent with the Second Amendment based on the historical test outline in *Bruen*." (*Id.*).

### 1. Waulk's Conduct Is Not Protected by the Second Amendment

Relying on *Bruen* and *Rahimi* as its north stars, the Court must first decide whether the "Second Amendment's plain text covers" Waulk and his "conduct[.]" *Bruen*, 142 S. Ct. at 2126; *see also Rahimi*, 144 S. Ct. at 1897. Here, the Government concedes that Waulk is part of "the people" within the meaning of the Second Amendment. (ECF No. 232 at 13). But the Government argues that Waulk has failed to show that the Second Amendment protects his specific conduct. (*Id.*). The Court agrees.

*Bruen*'s analytical starting point is whether an individual challenging a firearms regulation is part of "'the people' whom the Second Amendment protects." 142 S. Ct. at 2134. While the parties do not dispute that point here, another inquiry must be satisfied before the burden shifts to the Government to justify the regulation at issue — whether the Second Amendment "protects [the individual's] proposed course of conduct[.]" *Id.*; *see also Heller*, 554 U.S. at 626 (explaining

that the Second Amendment does not provide "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose").

That inquiry was easily satisfied in *Bruen*, where the proposed course of conduct was "carrying handguns publicly for self-defense." *Id.* But Waulk's constitutional challenge to § 922(g)(1), unlike *Bruen*, does not come by way of a civil suit seeking declaratory and injunctive relief with respect to proposed future conduct. *See id.* at 2125. Instead, Waulk challenges the constitutionality of § 922(g)(1) as he is currently charged with violating that law in a four-Count Indictment. Thus, Waulk's "actual conduct is the focus for analysis[.]" *United States v. McBroom*, No. 21-CR-97, 2023 WL 7221400, at *9 (W.D. Pa. Nov. 2, 2023). And the Court must take all factual allegations in the Indictment as true at this Rule 12 stage. *Huet*, 665 F.3d at 595.

On that score, Count II of the Indictment alleges that Waulk "knowingly and unlawfully possess[ed] firearms in furtherance of a drug trafficking crime[,]" contrary to 18 U.S.C. § 924(c)(1)(A)(i). (ECF No. 1 at 2). That drug trafficking crime is charged at Count I of the Indictment: conspiracy to distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine base. (*Id.* at 1); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846.[3]

As a sister district court aptly noted, where a "defendant is also charged with violating [§] 924(c), which implicates facts that defendant possessed firearms while drug trafficking[,]" those "facts cannot be divorced from the analysis of [§] 922(g)(1)[.]" *United States v. Birry*, No. 23-CR-

---

[3] The Court notes that the Indictment indicates that Count III stems from the same act or transaction as Counts I and II, since those Counts charge conduct alleged to have occurred on the same day. Thus, the Court draws the inference that Counts II and III refer to the same firearms. Moreover, under the "Forfeiture Allegations" portion of the Indictment, it attributes the same set of firearms to the conduct charged "in Counts Two through Four of this Indictment[.]" (ECF No. 1 at 6–7).

288, 2024 WL 3540989, at *11 (M.D. Pa. July 25, 2024). As the Third Circuit explained, "*Bruen* further supports the conclusion that possession of a firearm in furtherance of a drug crime is not covered by the text of the Second Amendment." *United States v. Cash*, No. 22-2713, 2023 WL 6532644, at *6 (3d Cir. Oct. 6, 2023).

Indeed, courts around the country have routinely held that possessing a firearm in furtherance of a drug trafficking crime does not constitute conduct protected by the Second Amendment. *See, e.g., United States v. Napolitan*, 762 F.3d 297, 311 (3d Cir. 2014) ("Needless to say, while the Second Amendment secures 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home,' it does not entitle a drug trafficker to carry a firearm in furtherance of his criminal exploits[.]") (quoting *Heller*, 554 U.S. at 570) (internal citation omitted); *United States v. Potter*, 630 F.3d 1260, 1261 (9th Cir. 2011) ("[I]t cannot seriously be contended that the Second Amendment guarantees a right to use a firearm *in furtherance of drug trafficking*.") (emphasis in original); *United States v. Bryant*, 711 F.3d 364, 369–70 (2d Cir. 2013).

Thus, while Waulk may be among "the people" protected by the Second Amendment, his conduct at issue in the present case—possessing a firearm in furtherance of a drug trafficking crime—falls firmly outside the ambit of the "conduct" to which the Second Amendment's protection applies. *Bruen*, 142 S. Ct. at 2134.[4] Accordingly, Waulk's as-applied challenge to § 922(g)(1) fails on that basis alone. *See Birry*, 2024 WL 3540989, at *11–13 (rejecting the defendant's

---

[4] Even if the Court were limited to analyzing Waulk's "proposed conduct," as the Supreme Court did in *Bruen*, Waulk has made no argument in his briefing regarding what his proposed conduct—in the absence of § 922(g)(1)'s application to him—would be. (*See generally* ECF No. 222); *see also United States v. Rodriguez*, No. 23-2730, 2024 WL 3518307, at *9 (3d Cir. July 24, 2024) (rejecting a defendant's as-applied constitutional challenge to § 922(g)(1) in part because "he has failed to argue that he possessed, or wishes to possess, firearms for any lawful purpose").

as-applied challenge to § 922(g)(1) where the defendant was charged in the same indictment with violating § 924(c) because "the Second Amendment does not apply to the proposed use of firearms for criminal exploits, such as possessing firearms in furtherance of trafficking drugs").

### 2. Even Assuming Waulk's Conduct Is Protected, the Government Has Carried Its Burden

Even assuming that Waulk's conduct is protected by the Second Amendment, the Court finds that the Government has carried its burden of showing that § 922(g)(1)'s application to Waulk "is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 144 S. Ct. at 1898. *Bruen* provides that historical tradition can be established by analogical reasoning. 142 S. Ct. at 2133. "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." *Id.* (internal quotations omitted). Because "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check[,]" the Government must only "identify a well-established and representative historical *analogue*, not a historical *twin*." 142 S. Ct. at 2133 (emphasis in original).

As Count III of the Indictment details, the prior offenses forming the basis for Waulk's § 922(g)(1) charge are one conviction of robbery and two convictions of aggravated assault. (ECF No. 1 at 3). The Government argues that disarming an individual who has been convicted of such "serious and dangerous offenses" finds a historical analogue in Founding-era laws that disarmed individuals deemed to pose a threat to the orderly functioning of society. (ECF No. 232 at 19–20).

For example, the Government notes that the Second Amendment "'codified a right inherited from our English ancestors[,]'" (*Id.* at 20) (quoting *Heller*, 554 U.S. at 599), and points to a 17th-century English statute that "empowered the government to 'seize all arms in the custody or possession of any person' who was 'judge[d] dangerous to the Peace of the Kingdom.'" (*Id.*) (quoting Militia Act 1662, 13 & 14 Car. 2, c. 3, § 13). The use of this statute, the Government argues, "'continued unabated' after the adoption of the 1689 English Bill of Rights, which expressly guaranteed the right to keep and bear arms." (*Id.*) (quoting Diarmuid F. O'Scannlain, *Glorious Revolution to American Revolution: The English Origin of the Right to Keep and Bear Arms*, 95 Notre Dame L. Rev. 397, 405 (2019)).

The Government also provides several Founding-era colonial laws that "categorically disarmed entire groups deemed dangerous or untrustworthy[.]" (*Id.* at 21) (citing Act of May 1, 1776, ch. 21, § 1, 1776 Mass. Acts 479; Act of June 13, 1777, ch. 21, § 4, 1777 Pa. Laws 63; Act of May 28, 1777, ch. 3 (Va.), reprinted in 9 William Waller Hening, *The Statutes at Large; Being a Collection of all the Laws of Virginia from the First Session of the Legislature, in the Year 1619*, at 281–83 (1821)). The Government likewise points to Founding-era laws that "called for case-by-case judgments about dangerousness" and "disarmed individuals who had demonstrated their dangerousness by engaging in particular types of conduct, such as carrying arms in a manner that spreads fear or terror among the people." (*Id.*) (citing Act for Constituting a Council of Safety, ch. 40, § 20, 1777 N.J. Laws 90; Act for the Punishing of Criminal Offenders, 1692 Mass. Laws 11–12; Act for the Punishing [of] Criminal Offenders, 1696–1701 N.H. Laws 15).[5]

---

[5] The Court notes that the Government, in its brief, also offers proposals made in state ratifying conventions and post-ratification laws and practice as historical analogues to § 922(g)(1)'s application to Waulk. (ECF No. 232 at 22–23).

With the Government's historical analogues identified, the Court turns to whether § 922(g)(1) "impose[s] a comparable burden on the right of armed self-defense and whether that burden is comparably justified" as applied to Waulk. *Bruen*, 142 S. Ct. at 2133. Recall that "[w]hy and how the regulation burdens the right are central to this inquiry." *Rahimi*, 144 S. Ct. at 1898.

The "how" of § 922(g)(1) prohibits individuals, like Waulk, who have been convicted twice of aggravated assault and once of robbery, "from possessing firearms because such individuals have demonstrated that they cannot be trusted to obey the law, and they pose a threat to the orderly functioning of society." *United States v. Wise*, No. 21-CR-511, 2023 WL 6260038, at *16 (W.D. Pa. Sept. 26, 2023). And the "why" of § 922(g)(1) is to "protect the public from [the] violence and disorder" posed by individuals with prior convictions like Waulk possessing a firearm. *Id.*

The Court finds that these "how and why" metrics at the center of *Bruen*'s historical analysis, as applied to Waulk and his prior convictions, are distinctly similar to the Founding-era firearms regulations identified by the Government, which share a "common theme" of "disarming individuals who lawmakers deemed to be dangerous or disruptive to society and protecting the public from disorder and danger." *Id.* at *15.

Thus, even assuming that Waulk's conduct at issue is protected by the Second Amendment, the Government has satisfied its burden of "demonstrating that" § 922(g)(1)'s application to him "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130; *see, e.g., United States v. Leslie*, No. 22-CR-391, 2024 WL 1718062, at *6 (E.D. Pa. Apr. 22, 2024) ("We join a number of our colleagues who have found banning firearms for individuals convicted of robbery or aggravated assault is constitutional because those who commit such crimes are dangerous and would have been disarmed at the time of the Founding.");

*see also id.* at *6 n.13 (collecting cases); *United States v. McCants,* No. 22-CR-310, 2023 WL 8436055, at *6–10 (finding that § 922(g)(1) was constitutionally applied to a defendant previously convicted of aggravated assault, relying upon Founding-era laws identical to those offered as historical analogues by the Government in the present case). Waulk's as-applied constitutional challenge therefore fails.

    C.    **Section 922(g)(1) Is Facially Constitutional**

Waulk also argues that "a faithful application of *Bruen* … compels the conclusion that [§] 922(g)(1) is unconstitutional on its face." (ECF No. 222 at 6). "Because there is no [F]ounding-era history of disarming people convicted of felonies at all," Waulk contends, § 922(g)(1) "'is unconstitutional in all of its applications.'" (*Id.* at 7) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)). The Government responds that Waulk's facial challenge must fail "because he has not met his burden of showing that § 922(g)(1) violates the Second Amendment in all applications." (ECF No. 232 at 28).

"A party asserting a facial challenge 'must establish that no set of circumstances exists under which the [challenged law] would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (quoting *Washington State Grange*, 552 U.S. at 449). Waulk is unable to make such a showing here.

For starters, as the Court just found, Waulk has failed to show that § 922(g)(1) is unconstitutional as applied to him, foreclosing any finding that § 922(g)(1) is violative of the Second Amendment in all applications, whatever the circumstances. Waulk's facial challenge also runs headlong into *Heller, McDonald,* and *Bruen,* all of which indicated that felon-in-possession

laws like § 922(g)(1) comport with the Second Amendment. 554 U.S. at 582; 561 U.S. at 786; 142 S. Ct. at 2162.

Indeed, "nearly every opinion in this circuit addressing this issue … has held that § 922(g)(1) is constitutional both on its face and as applied[,]" which "undermines any attempt by [Waulk] to show that § 922(g)(1) is unconstitutional in every application." *United States v. Hedgepeth*, No. 22-CR-377, 2023 WL 7167138, at *8 & n.5 (E.D. Pa. Oct. 31, 2023) (collecting cases). Because Waulk is unable to show § 922(g)(1)'s unconstitutionality in all applications, his facial challenge fails.

**D.    Section 922(g)(1) Is Not Unconstitutionally Vague**

Waulk's void-for-vagueness challenge meets the same fate. By his telling, "there is no way for an individual to know, in advance of indictment and conviction, whether" his or her conduct violates § 922(g)(1)'s mandate. (ECF No. 222 at 7). The Government counters that § 922(g)(1) "provides fair notice of what is prohibited, and the vagueness doctrine does not apply when a constitutional provision may provide a potential defense to an otherwise clear statute[.]" (ECF No. 232 at 30).

A criminal statute is impermissibly vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). Section 922(g)(1)'s plain text, however, is clear. It prohibits any person "who has been convicted in any court" of "a crime punishable by imprisonment for a term exceeding one year" from "possess[ing] in or affecting commerce, any firearm or ammunition[.]" 18 U.S.C. § 922(g)(1); *see also United States v. Harrison*, No. 23-CR-129, 2023 WL 6795588, at *20–21 (W.D. Pa. Oct. 13, 2023) (explaining that

an individual "can easily determine whether he [or she] is covered by [§ 922(g)(1)] by examining his [or her] prior criminal convictions, and the statutory maximum prison terms for the crimes of conviction").

Because § 922(g)(1) is sufficiently clear, the fact that "the Second Amendment might then constitutionally preclude punishment in certain instances" does not alter the Court's conclusion. *United States v. Ladson*, No. 23-CR-161-1, 2023 WL 6810095, at *13–14 (E.D. Pa. Oct. 16, 2023). Waulk's argument that § 922(g)(1) is unconstitutionally vague is meritless.

### E. Waulk's Commerce Clause Argument Is Foreclosed by Precedent

Finally, as Waulk recognizes,[6] his argument that § 922(g)(1) "is inconsistent with the original public meaning of the Constitution's Commerce Clause" is squarely foreclosed by precedent. (ECF No. 222 at 9). *See United States v. Singletary*, 268 F.3d 196, 204 (3d Cir. 2001).

## V. Conclusion

In sum, each of Waulk's constitutional challenges to § 922(g)(1) fail. His conduct at issue in the present case is not protected by the Second Amendment, and even if it were, the Government has carried its burden of showing that disarming individuals like Waulk comports with our Nation's history and tradition surrounding firearm regulation. Waulk's facial challenges to § 922(g)(1) are likewise insufficient. The Court will therefore deny Waulk's Motion to Dismiss Count III of the Indictment.

An appropriate Order follows.

---

[6] Waulk asserts his Commerce Clause based argument "for preservation purposes[.]" (ECF No. 222 at 9).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 3:20-cr-31-1 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| ISIAHA WAULK, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, to wit, this 26th day of August, 2024, for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that Defendant Isiaha Waulk's Motion to Dismiss Count III of the Indictment, (ECF No. 222), is **DENIED**.

BY THE COURT:

_____
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**