**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 3:20-CR-31-01 |
| | ) | |
| v. | ) | JUDGE STEPHANIE L. HAINES |
| | ) | |
| ISIAHA WAULK, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

Before the Court is Mr. Isiaha Waulk's Motion to Suppress Evidence with Citation to Authority (ECF No. 221), filed on July 3, 2024. On August 5, 2024, the Government filed its Response to Mr. Waulk's Motion. (ECF No. 235).[1] The Court scheduled the suppression hearing (*see* ECF Nos. 379, 382, 384) to hear oral argument on the Motion. At the July 10, 2025, hearing the Government summarized a joint factual stipulation prepared collaboratively by the Parties. (ECF No. 386). The Government requested, and was granted, leave to supplement its Brief in Opposition to the Suppression Motion and Mr. Waulk was provided seven days to respond thereto. (ECF No. 386). Parties also stated that they would rest on the arguments set forth in their briefing and the Court dispensed with oral argument. (ECF No. 386). The Government filed its Supplement on July 23, 2025, (ECF No. 387), and Defense responded. (ECF No 388).

## I. Background

On December 1, 2020, a federal grand jury indicted Mr. Waulk and his then co-defendant Mr. Derik Carothers. (ECF No. 1).[2] Count I of the Indictment charges Mr. Waulk and Mr.

---

[1] The Motion has been pending because of the questionable competency of Mr. Waulk. The Court originally scheduled the suppression hearing for October 29, 2024. (*See* ECF No. 327). However, because of concerns regarding the mental state of Mr. Waulk, the Court converted the hearing to a status conference. (*See id.*). On June 18, 2025, the Court found Mr. Waulk competent to stand trial. (ECF No. 377).

[2] On January 26, 2024, Mr. Carothers filed a Motion to Sever the Indictment such that his trial and Mr. Waulk's trial would occur separately. (ECF No. 167). The Court granted said motion on April 5, 2024. (ECF No. 175).

Carothers with conspiracy to distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, a Schedule II controlled substance. (*Id.* at 1); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846. Count II charges Mr. Waulk and Mr. Carothers with possession of firearms in furtherance of a drug trafficking crime. (ECF No. 1 at 2); 18 U.S.C. § 924(c)(1)(A)(i). Lastly, Count III charges Mr. Waulk with possession of firearms and ammunition by a convicted felon, listing two prior convictions. (ECF No. 1 at 3); 18 U.S.C. § 922(g)(1).[3]

The facts that led to the Indictment are as follows. On October 20, 2019, Pennsylvania State Police ("PSP") troopers tried to stop Mr. Carothers while he was driving a vehicle down State Route 28. (ECF No. 235 at 1; ECF No. 285 at 1).[4] Mr. Waulk was a passenger in the car, along with a minor 15-year-old known to be Carothers's sister. (ECF No. 387 at 2). Following a high-speed pursuit and crash, PSP troopers arrested all three occupants of the car. (ECF No. 235 at 1; ECF No. 285 at 1–2). During the PSP troopers' extrication of the vehicle's occupants, the troopers found one revolver outside the car. (ECF No. 285 at 2). According to the Government, Mr. Carothers was reaching for the firearm when officers tried to extricate him from the vehicle. (ECF No. 387 at 2).[5] The PSP troopers searched all three occupants of the vehicle. They recovered 1.19 grams of crack cocaine packaged for street sale, a digital scale, and $290 in U.S. currency on Mr. Carothers. (ECF No. 221 at 2; ECF No. 385 at 2). Another gun, a loaded Glock .40 caliber

---

[3] Count IV charged Mr. Carothers with possession of firearms and ammunition by a convicted felon. (ECF No. 1 at 4). On October 30, 2024, Mr. Carothers pleaded guilty to Count IV, and the Government dismissed Counts I and II. (*See* ECF No. 322).

[4] The Court denied (ECF No. 285) Mr. Carothers's Motion to Suppress Cellphone Evidence (ECF No. 254).

[5] There were conflicting accounts about whether it was Mr. Waulk or Mr. Carothers who reached for the gun. Likewise, there were conflicting accounts on whose person the troopers found drugs, a digital scale, and money. In the Government's final recitation of the facts in its Supplement, it states it was Mr. Carothers who reached for the gun and had the evidence on his person. (ECF No. 387 at 2).


extended magazine with 14 rounds of ammunition was also recovered near Mr. Carothers. (ECF No. 387 at 2).

At the crash scene, PSP gave multiple verbal commands for Mr. Waulk to show his hands and exit the vehicle. (ECF No. 387 at 2). Mr. Waulk was walking around the capsized vehicle and refused to exit. (ECF No. 387 at 2). A trooper yelled "Gun" upon seeing Mr. Waulk had a gun with an extended magazine in his rear waistband. (ECF No. 387 at 3). Mr. Waulk was forcibly extricated from the vehicle and a Glock Model 23, .40 caliber handgun with loaded extended magazine inserted was found under Mr. Waulk's body on the ground. (ECF No. 387 at 3).

The PSP seized the vehicle (ECF No. 221 ¶ 9), and on October 25, 2019, Magisterial District Judge William T. Fullerton of the Pennsylvania Court of Common Pleas for Butler County authorized a search warrant for the vehicle. (ECF Nos. 221-2, 235-1). Upon that warrant's execution, PSP troopers found (i) two "TCL" cellphones, (ii) fifty-five .40-caliber rounds, (iii) two Glock handguns reported as stolen (one having an obliterated serial number), (iv) an AR-15-style rifle, (v) an extended magazine, (vi) ski masks, and (vii) a ballistic vest. (ECF No. 221 at 2; ECF No. 235 at 2).

On November 4, 2020, Magistrate Judge Keith A. Pesto of the United States District Court for the Western District of Pennsylvania authorized two Warrants by Telephone or Other Reliable Electronic Means for the two recovered cell phones. (ECF Nos. 221-4–5; ECF Nos. 235-2–3). On October 3, 2022, Magistrate Judge Thomas M. Parker of the United States District Court for the Northern District of Ohio (Mr. Waulk was incarcerated at NEOCC) authorized a search warrant for a DNA buccal swab of Mr. Waulk. (ECF Nos. 221-8, 235-5).

With his Motion, Mr. Waulk challenges the constitutionality of the searches of (i) the cell phones (ECF No. 221 at 3–4), (ii) the DNA buccal swab (*id.* at 4–5), and (iii) of Mr. Waulk's

person at the accident scene (*id.* at 5–6). In short, Mr. Waulk alleges that these searches violated his Fourth Amendment right.

## II. Analysis

The Fourth Amendment to the United States Constitution protects citizens from unreasonable governmental searches and seizures. It provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause "is not a high bar. It requires only the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (alteration in original) (internal quotations omitted) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)). Further, "a finding of 'probable cause' may rest upon evidence [that] is not legally competent in a criminal trial." *United States v. Ventresca*, 380 U.S. 102, 107 (1965).

### A. The Warrant Searches

Magistrate judges must issue warrants only based on probable cause. In determining whether probable cause exists, the magistrate judge who issues the warrant must consider the "totality-of-the-circumstances" and make a "practical, common-sense decision." *Gates*, 462 U.S. at 238. "When faced with a challenge to a magistrate's probable cause determination, a reviewing court must remember that its role is limited." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). The reviewing court must conduct "a deferential review of the initial probable cause

determination made by the magistrate judge." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010). "Of course, such deference 'does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions.'" *Jones*, 994 F.2d at 1055 (quoting *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983)). But the deference does mean that "doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Gates*, 462 U.S. at 237 n.10 (quoting *Ventresca*, 380 U.S. at 109).

In sum, "[t]he role of a reviewing court is not to decide probable cause *de novo*, but to determine whether 'the magistrate had a substantial basis for concluding that probable cause existed.'" *Stearn*, 597 F.3d at 554 (quoting *Gates*, 462 U.S. at 238–39).

Pursuant to this standard, the reviewing court must limit its consideration to the facts in front of the magistrate judge—i.e., the four corners of the warrant application and affidavit. Therefore, here, the question is whether the warrant application and affidavit provided Magistrate Judge Pesto with a substantial basis to find probable cause, in regard to the cell phone search warrant, and Magistrate Judge Parker to find probable cause, in regard to the DNA search warrant.

**1. The Cell Phone Warrants**

The government triggers the protections of the Fourth Amendment when it invades an area where a person has a "constitutionally protected reasonable expectation of privacy." *New York v. Class*, 475 U.S. 106, 112 (1986) (citing *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). Under the Fourth Amendment, persons have a protected reasonable expectation of privacy to the content of their cell phones, and thus the Supreme Court has held that police must get a warrant before searching a cell phone seized incident to an arrest. *Riley v. California*, 573 U.S. 373, 403 (2014) ("Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is ... simple - get a warrant."); *see also id. at 401* ("Our holding,

of course, is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest.").

Mr. Waulk argues that the search of the cell phones violated his Fourth Amendment right against unreasonable searches. (ECF No. 221 3–4). Relying on *Riley*, he argues that the search of the cell phones required a warrant supported by probable cause. However, the affidavit by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Michael Namey ("Agent Namey"), submitted with the search warrant application, lacked probable cause because the assumption that individuals document firearm possession or drug activity on their phones is merely speculative as to whether Mr. Waulk's cell phone will hold evidence supportive of a conviction for Mr Waulk's indicted offenses. (*Id.*).

The Government, on the other hand, argues that probable cause supported the cell phone search. (ECF No. 235 at 5). Specifically, the Government argues that Agent Namey's experience and expertise in drug trafficking and firearm crimes, along with a restatement of the facts that led to Mr. Waulk's arrest, provide a substantial basis for Magistrate Judge Pesto's conclusion that probable cause existed to authorize the cell phone search warrants. (*Id.* at 5–6).

Agent Namey was the affiant to the cell phone warrants. (*See* ECF No. 235-4). In his Affidavit in Support of Application for a Search Warrant for a Cellular Phone, he provided the following facts, which he found to be pertinent as they apply to probable cause in his experience:

- I am currently a Special Agent with the [ATF] and have been so employed since 2015. As a Special Agent[,] ... I am responsible for investigating violations of federal law. I received intensive ATF training lasting approximately 4 months that included the investigation of federal firearms and drug laws. I have worked on multiple federal cases involving firearms and/or illegal drugs since becoming an ATF Special Agent. Prior to becoming an ATF Special Agent, I was employed as a Deputy United States Marshal with the United States

Marshal Service (USMS). I began that position in 2008. In order to obtain that position, I received intensive training, lasting approximately 4 months, in law enforcement, security[,] and fugitive apprehension. This training included significant information regarding firearms and drug matters. (*Id.* at 2).

- As an ATF special agent, I have been involved in narcotics and firearm related arrests and the execution of search warrants that resulted in the seizure of narcotics and firearms. I have been involved in investigations that included the use of informants who provided information and assistance resulting in arrests for drug trafficking and federal firearm crimes. Through my involvement in these narcotics investigations, I have handled cooperating sources of information who were involved in narcotics acquisition and/or trafficking. Additionally, I have reviewed thousands of communications between drug traffickers through review of cell phones seized pursuant to drug investigations. I have had hundreds of conversations with drug traffickers, drug users, and other members of law enforcement regarding the methods and language used by drug traffickers to smuggle, store, and distribute drugs and to collect and launder drug distribution proceeds. (*Id.*).

Under the affidavit's section titled, Identification of the Devices to be Examined, Agent Namey stated:

- I am aware that criminals often take trophy photographs and videos using their cellular telephones of their drugs, firearms, proceeds, [and] related criminal activity and retain them on their cellular telephones. I am also aware that such criminals, like law-abiding citizens, will take photographs and videos using their cellular telephones of themselves with their friends, relatives, and associates and keep them on their cellular telephones. When they are taken or retained by criminals, such photographs and videos can be evidence, and can lead to additional evidence, of illegal activity by identifying the perpetrators, contraband, and people who are actively assisting and/or supporting the criminal activity, as well as the locations where they live or where they store their contraband, firearms, proceeds, or paraphernalia. (*Id.* at 5).

Under the affidavit's section titled, "Facts and Circumstances Supporting Probable Cause", Agent Namey provided facts about Mr. Waulk's arrest:

- On October 20, 2019, at approximately 8:45 P.M., [PSP] Troopers attempted to stop a vehicle on [S]tate [R]oute 28 in Armstrong County, Pennsylvania. When the troopers activated their lights and sirens, the vehicle fled at a high rate of speed. During the high[-]speed pursuit, the vehicle exited the highway and crashed getting on an exit ramp. Troopers arrived at the crash scene and located three individuals inside the vehicle later identified as [Mr. Waulk, Mr.

Carothers, and a minor female]. As [Mr. Waulk] was crawling out of the vehicle, officers retrieved a loaded Glock handgun, a quantity of crack cocaine[,] and [a] digital scale from his person. Following the pursuit, officers learned that both [Mr. Carothers] and [Mr. Waulk] were wanted on [b]ench [w]arrants and were convicted felons[,] prohibiting them from possessing firearms and[/]or ammunition. Both suspects were charged via complaint and were detained on the state bench warrants. Laboratory tests by the [PSP] forensic crime lab confirmed that the substance seized from [Mr. Waulk] was indeed crack cocaine. (*Id.* at 5–6).[6]

- On October 23, 2019, PSP Troopers obtained a state search warrant for the vehicle occupied by [Mr. Carothers] and [Mr. Waulk]. During the execution of the [state] [s]earch [w]arrant[,] the following items were located and seized from inside the vehicle:

    [a.] Ballistic Vest
    [b.] Face Masks
    [c.] Two Black TCL cellular phones (7660500040-1, 766050200040-2)
    [d.] [Two] stolen [G]lock handguns, one of which had an obliterated serial number
    [e.] AR-15[-]style rifle
    [f.] high[-]capacity firearm magazines
    [g.] Rifle and Handgun ammunition (*Id.* at 6).

- Based upon my experience, your [A]ffiant has probable cause to believe that the devices recovered from the vehicle will contain standard cell phone features and data, including incoming and outgoing call history, incoming and outgoing text messages, and stored contact information. (*Id.*).

- The call history, contacts, photographs and other stored information will help to show whether the phones were being used in connection with felony offenses such as drug possession, drug dealing, firearms possession, or firearms trafficking. A review of the cell phone's contents will also provide indicators (for example text messages with, photos of, and contacts to family members of [Mr. Carothers] and [Mr. Waulk]) that help confirm them as the user of the cell phone. In my experience, the sale of narcotics is nearly always carried out through the use of cell phones and often serves as the narcotics dealer's primary

---

[6] The Court notes that the facts asserted in Agent Namey's affidavit are faulty. As stated above, the Parties confirmed that it was Mr. Carothers, not Mr. Waulk, who crawled out of the car, attempted to reach a firearm, and whose search of his person yielded a quantity of crack cocaine, a digital scale, and money. Though the error undermines the accuracy of the affidavit, it does not strip the affidavit entirely of credibility. The erroneous facts do not comprise all the facts in Agent Namey's affidavit. Mr. Waulk was part of a high-speed chase fleeing from law enforcement, which resulted in an accident that produced evidence that led to the arrest and search incident to arrest of Mr. Waulk. The totality of the circumstances created the probable cause for the warrants. This Court finds that if it eliminated the faulty facts, the totality of the circumstances would still provide probable cause for the Magistrate Judge to issue a warrant. Additionally, the contextual relationship between Mr. Carothers and Mr. Waulk provides a relationship between Mr. Waulk and the evidence found on Mr. Carothers' person.

    means of communicating with customers and suppliers. It has been my experience that drug customers will call, IM[,] and text both sellers and buyers in order to arrange for the purchase of narcotics. It has been my experience that such call data and text messages will remain stored in phones for days and often much longer before it is deleted by the phone's possessor. Even deleted items can often be recovered from a cell[ ]phone during a search. (*Id.*).

- In my experience, it is very common for criminals to photograph themselves, and often their associates, in possession of drugs, firearms, currency, and other contraband. It has also been my experience that cell phones are frequently used to take such photographs because cell phones are often carried on one's person at all times, unlike actual cameras. Further, it has been my experience that such photographs are frequently sent from cell phones to social media sites (such as Facebook or Twitter)[,] as well as from cell phone to cell phone via text messages and electronic mail. For these reasons, your [A]ffiant believes that the devices recovered in the vehicle occupied by [Mr. Carothers] and [Mr. Waulk] will probably contain photographs and communications about the theft and possession of firearms and illegal narcotics. (*Id.* at 7–8).

Attachment B to the Warrant provided the scope of the cell phone search to include:

1. incoming and outgoing call and text message logs
2. contact lists
3. photo and video galleries
4. sent and received text messages
5. online searches and sites viewed via the internet
6. online or electronic communications sent and received, including email, chat, and instant messages
7. sent and received audio files
8. navigation, mapping, and GPS files
9. telephone settings, including speed dial numbers and the telephone number for the subject telephone and related identifying information such as the ESN for the telephone
10. call forwarding information
11. messages drafted but not sent
12. voice messages
13. application data (*Id.* at 10).

The Court finds Agent Namey's extensive experience and training in both narcotics and firearm investigations to be a reliable source about how persons engaged in narcotics and firearm crimes use cell phones that render the cell phones vehicles of evidence. Agent Namey's experience and explanation provide a substantial basis to conclude that evidence of Mr. Waulk's alleged

crimes would be discovered on the cell phones. *See United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) ("The issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense."); *see also United States v. Carey*, No. 3:-18-CR-037, 2020 WL 59607, at *2 (M.D. Pa. Jan. 6, 2020) (finding a nexus between the defendant's cell phones and his alleged drug trafficking when "the affiant [, a police corporal,] indicated, 'individuals associated with the distribution of drugs often utilize multiple cellular telephones and/or frequently change their telephone numbers in an effort to conceal their criminal activities,' and such individuals 'often use cellular communications ... to arrange drug transactions,' as well as to 'take pictures of their drugs and/or money obtained from the sale of drugs'"); *United States v. Johnson*, No. 2:17-CR-00243, 2019 WL 5288015, at *13 (W.D. Pa. Oct. 18, 2019) ("In conjunction with [the police-detective affiant's] stated experience that cell phones are often used in narcotics crimes, the Court concludes that the issuing judge had a substantial basis to conclude that evidence of the alleged crimes would be discovered on the cell phones, fulfilling the probable cause requirement.").

The affidavit also provided the facts about Mr. Waulk's arrest, which included evidence littered from the crashed vehicle and sight of a gun in Mr. Walk's waistband. From the affidavit, Magistrate Judge Pesto could draw reasonable inferences linking the recovered contraband to Mr. Waulk. For example, upon impoundment and a lawful search of the vehicle the PSP troopers recovered *two* cell phones, *two* reportedly stolen Glock handguns, firearm magazines, and ski masks from the vehicle, all of which suggest more than one suspect of criminal activity. *See United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) ("[P]robable cause can be, and often is, inferred

by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime." (citations and internal quotations omitted)).

Additionally, regardless of whether PSP found the drugs and drug paraphernalia on Mr. Waulk's or Mr. Carothers' person, the two were in the same car together. Thus, Magistrate Judge Pesto could reasonably infer that Mr. Waulk, at a minimum, knew about the contraband or, more culpably, owned or controlled the contraband. *See Maryland v. Pringle*, 540 U.S. 366, 372 (2003) (holding that, in the context of probable cause for arrest, it is "an entirely reasonable inference ... that any or all three of the occupants [of a vehicle] had knowledge of, and exercised dominion and control over, the cocaine," when the cocaine was "behind the back-seat armrest and accessible to all three men"). Therefore, in addition to Agent Namey's experience and explanation, the affidavit's discussion of the facts about Mr. Waulk's arrest, including the high-speed chase, the refusal to exit the vehicle, the gun in Mr. Waulk's waistband, and the evidence recovered from the vehicle further provided Magistrate Judge Pesto, when considering the totality of the circumstances, with a substantial basis for a finding of probable cause to issue the warrant to search the cell phones found in the car.

**2. The DNA Warrant**

People have a protected reasonable expectation of privacy to their DNA. *See Maryland v. King*, 569 U.S. 435, 446 (2013) ("It can be agreed that using a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search."). "Because a buccal swab counts as a search, the warrant requirement applies." *United States v. Bailey*, No. 23-CR-498, 2024 WL 4906483, at *5 (E.D. Pa. Nov. 27, 2024) (citing *Schmerber v. California*, 384 U.S. 757, 770 (1966)).

Mr. Waulk argues that collecting his DNA via a buccal swab violated his Fourth Amendment right. (ECF No. 221 at 4–5). Specifically, he argues that the warrant and its accompanying affidavit lacked a substantial basis for concluding that probable cause existed because a DNA analysis would not produce meaningful evidence of possession or trafficking of firearms or narcotics. (*Id.* at 5). He also argues that inconsistencies between the warrant application (which cites the drug charge) and the supporting affidavit (which relies on the firearm charges) create "vagueness and confusion" about the "true purpose of gathering Mr. Waulk's DNA," which precludes the documents from providing a basis of probable cause. (*Id.*).

In opposition, the Government argues the following:

> The affidavit seeking a DNA buccal swab from Waulk[] … details his role in the aftermath of the traffic crash on October 20, 2019. The affidavit lays out the items that were recovered, to include two .40 caliber Glock handguns, the .38 caliber Smith & Wesson revolver, and .40 caliber ammunition. The affidavit also provides that the presence of DNA evidence was recovered on these items, and that Waulk's DNA is needed for verification. … Waulk was discovered in a vehicle that had fled from police, with the presence of crack cocaine, a digital scale, U.S. currency, and in possession of a firearm. Due to the presence of two other individuals in the vehicle at the time of Waulk's arrest, it is clear that Waulk's DNA would assist in determining the possession of the various seized items.

(ECF No. 235 at 6–7).

Agent Namey was the affiant to the DNA warrant. (*See* ECF No. 235-4). Like he did in the cell phone search warrant affidavit, in his Affidavit in Support of [the DNA] Search Warrant (ECF No. 235-5), Agent Namey provided facts about his relevant training and experience (here, regarding DNA forensics) and the facts of the case.[7] (*Id.* at 4–6). He also explained how DNA evidence could link criminal evidence (e.g., the firearms) to a specific individual, such as Mr. Waulk. (*Id.* at 4–6). As discussed above in the cell phone search warrant Section, here, all of the

[7] The Court again notes the erroneous or vague rendition of the facts does not negate probable cause given the totality of the circumstances that are considered by a Magistrate Judge when issuing a search warrant.

training, experience, and facts of the case that Agent Namey listed are relevant in Magistrate Judge Parker's consideration of whether probable cause exists.

Although the DNA warrant application only cites the drug charge at issue (ECF No. 221-7 at 1), its attached affidavit makes clear that the firearm charges are at issue too. (ECF No. 221-6 at ¶¶ 7, 8). "'[Mr. Waulk's] DNA sample will be used for comparison and elimination testing relative to the firearms described herein. In other words, there is probable cause that WAULK's DNA will be linked to evidence of any crimes alleged herein, in particular violations of 18 U.S.C. §§ 922(g) and 924(c)."[8] Contrary to Mr. Waulk's argument, there is no vague, confusing contradiction that would preclude Magistrate Judge Parker from finding a substantial basis for concluding that probable cause existed. Agent Namey's experience and explanations provide a substantial basis to conclude that evidence of Mr. Waulk's alleged crimes would be discovered through DNA.

**B. Search of Mr. Waulk's Person**

A *Terry* search is an exception to the Fourth Amendment's warrant requirement. *See Terry v. Ohio*, 392 U.S. 1, 24 (1968) ("When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."). Additionally, a search incident to a lawful arrest is an exception to the warrant requirement. *See Chimel v. California*, 395 U.S. 752, 762–63 (1969); *United States v. Robinson*, 414 U.S. 218, 235 (1973) ("A custodial arrest of a suspect based on

---

[8] Under Title 18 United States Code, Section 924(c), it is unlawful for a person to possess a firearm in furtherance of a drug trafficking crime. Under Title 18, United States Code, Section 922(g)(1), it is unlawful for any person previously convicted of a felony offense, to knowingly possess a firearm and or ammunition that affected interstate commerce.

probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.").

Mr. Waulk argues that the search of his person violated the Fourth Amendment because it did not meet the criteria for either a search incident to a lawful arrest or a *Terry* search. (ECF No. 221 at 5–6). At the time of the search, Mr. Waulk argues he was not under arrest or in custody, and law enforcement lacked reasonable suspicion of criminal activity to justify a *Terry* stop. He alleges that the mere possession of a firearm, without knowledge that Mr. Waulk was a felon, could not establish reasonable suspicion.

The Government provided its response in its Supplement. (ECF No. 387). It contends that the search of Mr. Waulk was at a minimum a valid *Terry* search, but also it was a valid search incident to arrest. (ECF No. 387 at 3). The Government states that a law enforcement officer may conduct an investigative *Terry* stop as long as the "officer has reasonable articulable suspicion that criminal activity is afoot." *Illinois v Wardlow*, 528 U.S. 119, 123 (2000). Officers may conduct a frisk of a suspect if the officers have a reasonable articulable suspicion that the suspect is armed and dangerous. *See Adams v. Williams*, 407 U.S. 143, 146 (1972); *Michigan v. Long*, 463 U.S. 1032, 1050 (1983). When conducting a reasonable suspicion analysis, courts must "permit officer to make 'commonsense judgments and inferences about human behavior'… including the modes or patterns of operation of certain kinds of lawbreakers." *Kansas v. Glover*, 589 U.S. 376, 380-81 (2020).

In this case, Mr. Waulk and Mr. Carothers led officers on a high-speed chase that resulted in a violent crash. Upon arrival to the crash scene, before the arrest, and during the PSP troopers' extrication of the vehicle's occupants, the troopers found one revolver outside the car, (ECF No. 285 at 2), and witnessed Mr. Carothers reaching for the loaded gun. (ECF No. 387 at 5). At the

same time, Mr. Waulk was walking inside the capsized vehicle and would not respond to orders to show his hands and exit the car. (ECF No. 387 at 5). PSP Sergeant Thomas Dubovi alerted troopers that Mr. Waulk had a gun with an extended magazine in his rear waistband. (ECF No. 387 at 5). Mr. Waulk was forcibly extricated from the vehicle, (ECF No. 387 at 5), and a loaded Glock Model 23, .40 caliber handgun with loaded extended magazine inserted was found under Mr. Waulk's body on the ground. (ECF No. 387 at 3).

Given these facts, the Court can conclude that the PSP officer was justified in believing that Mr. Waulk, who the officer was investigating at close range, was armed and presently dangerous to the officer or to others. *See Terry*, 392 U.S. at 24. The Court agrees with the Government that given the totality of the circumstances there was more than sufficient evidence to support a reasonable suspicion that criminal activity was afoot and that the troopers were in danger.

Moreover, Mr. Waulk argues the search-incident-to-a-lawful-arrest exception cannot apply because "he was not yet in custody, much less under lawful arrest." (ECF No. 221 at 6). Mr. Waulk was in custody. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (defining custody as "taken into custody or otherwise deprived of freedom of action in a significant way"). A reasonable person in Mr. Waulk's position would not have felt free to terminate the interaction with the PSP and leave. Furthermore, the recitation of the totality of events supports probable cause for the lawful arrest. *See Chimel*, 395 U.S. at 762–63 ("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in

order to prevent its concealment or destruction.”).

## III. Conclusion

The Court finds that the Magistrate Judges were justified in determining that probable cause was properly shown to support lawful warrants to search the cell phones recovered from the impounded vehicle and the DNA buccal swab obtained for the purpose of DNA comparison to firearms recovered. Furthermore, the search of Mr. Waulk’s person incident to arrest or under the legal auspices of a *Terry* stop was also supported probable cause. The search of Mr. Waulk’s person, the buccal swab, and the search of the cell phones did not violate Mr. Waulk’s Fourth Amendment right. Accordingly, his Motion to Suppress Evidence (ECF No. 221) is DENIED.

An appropriate order will follow.

DATED: August 27, 2025

Stephanie L. Haines
United States District Judge